**BRAWLEY et al. v. ESTERLY.**

No. 43733.

Supreme Court of Missouri.

Division No. 1.

April 12, 1954.

Motion for Rehearing or to Transfer to Court en Banc Denied May 10, 1954.

Burden & Shortridge, Joplin, for appellant.

Clifford Greve, St. Louis, Seiler, Blanchard & Van Fleet, Joplin, for respondents.

.VAN OSDOL, Commissioner.

This action was instituted by plaintiffs, minors, for the wrongful death of their father, Willard Brawley, who was fatally injured or burned in the cab of the westbound tractor-trailer when or after the combination motor vehicle had collided with the eastbound DeSoto automobile driven by defendant's decedent Samuel H. Ward. The collision occurred about seven o'clock in the morning of December 22, 1950, on a long, sweeping curve in U. S. Highway 166 about one and a half miles east of Sarcoxie. Both defendant's decedent and his wife were fatally injured. No eye witness testified of having observed the actual collision.

Plaintiffs' case was submitted . to the jury (by plaintiffs' principal Instruction No. 2) on primary negligence of defendant's decedent in failing to keep the DeSoto automobile as close to his right-hand side of the highway as practicable, in failing to turn the automobile to his right of the center of the highway so as to pass the tractor-trailer without interference, and in driving the automobile across the center of the highway into the pathway of the tractor-trailer. The trial court also submitted the issue of contributory negligence of plaintiffs' decedent in failing to drive the tractor-trailer as close to his right-hand side of the road as practicable and in failing to turn the tractor-trailer to his right of the center of the highway so as to pass the DeSoto without interference. A jury returned a verdict for plaintiffs awarding $15,000 damages, and defendant has appealed from the ensuing judgment.

Herein upon appeal, defendant-appellant contends the trial court erred (1) in overruling defendant's motion for a directed verdict, (2) in the admission of evidence, (3) in giving plaintiffs' principal Instruction No. 2, and (4) in overruling defendant's objection to improper, prejudicial and inflammatory argument.

Defendant did not introduce any evidence, and we shall endeavor to make a painstaking statement of the facts and circumstances as shown by plaintiffs tending to support the theory of plaintiffs' case.

U. S. Highway 166, a "two-lane" highway, is of "black-top" twenty-two and a half feet wide. The center of the pavement is indicated by a white line. In approaching the curve where the tragedy occurred from the. west, an automobile moves eastwardly down a hill and across a bridge or culvert, and then somewhat upgrade bearing to the right (southeastwardly) into and around the curve. A yellow "no passing" line is in the south lane of the pavement.

Plaintiffs' decedent had left St. Louis, 275 miles from the point of collision, some time after eight o'clock in the evening of December 21st. He was on his regular run from St. Louis to Joplin. He was driving a K-7 International truck with a Fruehauf trailer, 32-foot van, attached. The trailer at its rear was equipped with tandem dual wheels (four wheels on each side). The tractor at its rear was equipped with dual wheels (two wheels on each side). The overall length of the tractor-trailer combination vehicle was about forty-two feet. The trailer was loaded with prefabricated steel shelving.

Defendant's decedent Samuel H. Ward and his wife, Velma I. Ward, had started from Bell, California, approximately 1660 miles from the point of the collision, some

time in the evening of December 19th. As stated, they were driving a DeSoto automobile. It is readily inferred the husband was driving the DeSoto at the time of the collision. They were intending to spend the Christmas holidays with relatives and friends in Missouri and Illinois.

There was evidence tending to show that, after the collision, the back end of the trailer rested six or eight inches south of the center line of the pavement. The trailer lay on its right side. The wrecked tractor extended out south of the pavement. The tractor was upside down. The right front of the tractor was demolished. The wrecked Ward car, the DeSoto, was headed westwardly on the north side of the pavement. About two-thirds of its length was east of the west side (the top) of the overturned trailer. There was just room to walk between the rear of the trailer and the wrecked DeSoto. Willard Brawley was "under the steering wheel" of the tractor. The cab of the tractor was ablaze. Gasoline was coming from the tank under the driver's seat. The DeSoto was reduced to a mass of bent and twisted metal.

A truck driver, Donald R. Mead, who was the first to arrive at the scene, testified there was a man (defendant's decedent) in the driver's seat of the automobile and a lady on the right-hand side of the front seat. Because of the extreme heat, the witness could not rescue plaintiffs' decedent from the burning cab of the tractor.

A witness for plaintiffs testified that she resided in a house south of Highway 166 and about six hundred sixty feet from the point of the collision. Around seven o'clock in the morning of December 22d she was returning to the house from her outside toilet. She saw the Ward car coming from the west, and she saw the truck coming from the east; "the Ward car was a little the farthest away" from the place where the collision later occurred. She did not see the collision, but heard the impact. She looked up to see what was occurring. She saw the "tractor part" of the truck "leaving the highway * * * going south." When she "looked down there," she did not see the DeSoto. After a short delay the witness went to the scene of the collision. She saw black marks coming down the highway from the east. The marks were a little north of the center line. "There was all kinds of rubbish from the scene of the accident. * * * North of the cars.".

Witness, Donald R. Mead, observed skid marks of dual wheels along the pavement. They were about fifty feet long. (Another witness estimated the marks were thirty-five or forty feet long.) The marks began about two feet north of the center line and the west ends curved slightly until the marks faded out in or a little beyond the (white) center line of the pavement. The marks "started in light and finished up heavy. * * * They were fresh." There was a flat spot "about the size of the palm of your hand" on the tires of the left tandem wheels of the trailer. An emergency application of the brakes "would wear a place on the tires" like the spot witness saw. About twenty feet west of the west ends of the "dual" skid marks, were some "gouged" marks. These marks were just north of the center line and, at this point, there was some dirt and grease on the pavement—a spot "maybe a foot, a foot and a half in diameter. * * * It looked fresh. * * * maybe north of that * * * there was a tool box, a sink and just sheets of moulding off the car and bits of glass and shot gun shells." There might have been "two or three pieces (of debris) scattered around ten or twelve feet, but ninety percent was on the north side of the road." There was an automobile tire mark "among the debris." The automobile tire mark was running "west to east, generally." It was ten or twelve feet long. It began about thirty feet west of the dual marks. One end of the automobile mark was almost to the center line, and the other was almost to the "north edge of the slab." About ten feet west of the automobile tire mark, another "dual mark started" about three feet from the north edge of the pavement and curved down across the pavement to the southwestward. The dual mark was forty or fifty

feet long. The mark "looked like just a skid mark on a sharp left-hand angle." The "upside down" tractor was straight south of this mark. The debris was scattered "in between" the easterly and westerly dual wheel marks. The overturned trailer was extending straight out towards the center line. Another witness said there was a "pitted place" in the pavement "where it looked like some hard object had hit it." It was "a little bit south of the center line" and west of the marks made by the dual wheels.

A witness had arrived at the scene a few minutes after the collision. He observed "this man and woman (defendant's decedent and wife) out of the car, lying on the (north) shoulder * * * and this Mr. Brawley was lying in the cab of the truck and truck was on fire. * * * And I looked to see where his tire marks were and his tire marks were all in the north lane of the highway on his side of the road." These tire marks "hadn't been driven over."

Sometime after the collision, the trailer was moved southwardly off the pavement, and the upset tractor was set back uprightly on its wheels. Photographs indicate the right front of the tractor had been struck with great force. The grill work and radiator were twisted over somewhat to the tractor's right. The right front fender and the right end of the front bumper were crumpled up or sheared off. The front wheels are shown to have been turned sharply to the tractor's left. As stated, the DeSoto was demolished.

▮▮ (1) An appellate court, in reviewing a contention of error in overruling a defendant's motion for a directed verdict involving the question of whether a plaintiff has made out a case for consideration by a jury, must have a regard for the rule that substantial evidence must have been introduced tending to prove the facts essential to plaintiffs' recovery. In examining the evidence pertinent to this question, the appellate court must view the evidence from a standpoint favorable to plaintiff.

▮▮ Plaintiffs were obliged to rely almost entirely upon circumstantial evidence. Of course facts essential to a recovery may be proved by circumstantial evidence, but the shown circumstances must be such that the necessary facts may be inferred therefrom and they must reasonably follow. The evidence must "exclude guesswork, conjecture, and speculation as to the existence of the necessary facts." Bates v. Brown Shoe Company, 342 Mo. 411, 116 S.W.2d 31, 33; Lappin v. Prebe, 345 Mo. 68, 131 S.W.2d 511; Schoen v. Plaza Express Co., Mo.Sup., 206 S.W.2d 536. When the inference of a fact essential to a plaintiff's recovery has no evidentiary basis, we, and a jury, may not *speculate* as to the existence of the essential fact—the word "speculate" being here used in the sense of reaching a conclusion by theorizing upon assumed factual premises outside of and beyond the scope of the evidence. West v. St. Louis Public Service Co., Mo.Sup., 236 S.W.2d 308.

In Lappin v. Prebe, supra, cited by defendant-appellant, the facts and surrounding circumstances detailed by plaintiff's witnesses afforded no foundation for a conclusion that deceased, Lappin, had been walking on the west side or shoulder of the highway where he could have been struck by defendants' southbound truck. Defendants' evidence did not aid plaintiff's case. To assume that deceased was negligently struck while walking on the west side or shoulder of the highway would have been mere speculation. In the case of Bowers v. Columbia Terminals Co., Mo.App., 213 S.W.2d 663, it could have been reasonably found that defendant Becker was negligent in failing to keep a lookout ahead and laterally, but there was no substantial evidence tending to support another essential element of actionable negligence—causation. There was an interval of time, longer than it would have taken plaintiffs' decedent to move without deviation on his course from the point where he was last seen by the witness Gronkowski to the place of the fatal injury, during which interval of the time deceased's

movements were wholly unaccounted for; and any inference that defendant Becker's negligence in failing to keep a lookout caused the fatality drawn from an assumption that deceased had continued to move without deviation in the direction of his fatal injury during which movement he could have been seen by defendant Becker would have been pure conjecture.

In Schoen v. Plaza Express Co., supra, the northbound transport truck and the southbound Ford collided at an angle, so that, regardless of where the point of contact was with reference to the center of the highway, the fragments of the damaged vehicles would naturally have been cast to the westward. The only visible tracks of the truck were on the east side of the highway; there were no tire or "gouged out" marks on the surface of the highway which might have indicated the point of contact. And so it seems the plaintiff's theory that defendants' truck was being negligently driven too far over to the defendant driver's left was merely speculation without substantial basis of fact. The circumstances of our case are different from those shown in the Schoen case. The facts of our case are more like the shown facts in Filkins v. Snavely, 359 Mo. 356, 221 S.W.2d 736, 738.

 In our case the tracks of the automobile; the debris north of the center line among which debris the automobile track showed; and the gouged out mark north of the center line all indicate that the DeSoto had been moving, had swerved or was swerving over onto, and that the collision occurred on the north side of the pavement. It is true, as urged by defendant-appellant, that a motorist traveling on a highway is not necessarily guilty of negligence in turning to the left when attempting to avoid a motor vehicle approaching from the opposite direction. Whether conduct is negligence depends upon the facts and circumstances of the particular case. "'Under appropriate circumstances a motorist meeting another automobile may turn to the left.'" Filkins v. Snavely, supra; Lewis v. Zagata, 350

Mo. 446, 166 S.W.2d 541 and authorities therein cited; Borrini v. Pevely Dairy Co., Mo.App., 183 S.W.2d 839. However, in the instant case, there was no evidence of marks or other signs indicating the tractor-trailer or any part thereof was south of the center line of the pavement until after the vehicles had collided. There were no circumstances pointing to a conclusion that defendant's decedent was obliged to move over onto his left-hand side of the pavement in order to avoid a collision with the tractor-trailer. Contrast Borrini v. Pevely Dairy Co., supra.

Defendant urges that no reliance should be placed upon the testimony of the witness Mead identifying the easterly dual wheel marks as those of the *left* dual wheels of the trailer. Defendant says that, so far as the evidence shows, these marks may well have been made by the *right* dual wheels of the trailer, and the left wheels and the left side of the tractor-trailer may well have been over on the south side of the center line. This argument is founded upon the fact that the witness Mead, who particularly examined the marks north of the center line and the tires on the left dual wheels of the trailer, made no particular examination of the tires on the right dual wheels of the trailer. However, the circumstance of the dual wheel marks, apparently made by the dual wheels of the tractor, west of the point where the vehicles seem to have collided, tends to show that the combination vehicle was yet moving westwardly on the north side of the pavement *after* the vehicles collided. As we have said, there was testimony that these westerly dual wheel marks "started" about three feet from the north edge of the pavement and delineated a sharp "left-hand angle."

▪ Theorizing from the facts and circumstances shown in evidence, we venture to say it is probable that the plaintiffs' decedent driving the tractor-trailer on his right side of the pavement was moving westwardly into and around the curve and, when he was driving some distance east of the point where the easterly dual wheel

marks were later perceived, he observed that the DeSoto was over or was moving over onto the north side of the pavement. Plaintiffs' decedent applied the brakes of the trailer and undertook to turn left, but the left turn was not brought into effect until after the vehicles collided. This theory is consistent with and is supported by the evidence of "left-hand angle" marks of the dual wheels of the tractor west of the debris and starting near the north side of the pavement; with the gouged out marks north of the center line; with the automobile tire mark and debris "in between" the easterly and westerly marks of dual wheels; and with the positions in which the vehicles came to rest after the collision. This theory is not inconsistent with the slightly southward curve at the west end of the easterly dual marks of the trailer. The span of the wheel base of the combination vehicle between the trailer and tractor dual wheels, it would seem, approximately spanned the distance between the west ends of the easterly dual wheel marks and the westerly dual wheel marks curving down across the south lane. We, of course, cannot certainly say the collision was brought about that way. But we do say that, in the shown circumstances, we think a jury could reasonably draw such a conclusion. It follows that we believe that it could be reasonably inferred from the evidence that the collision was negligently caused by defendant's decedent in operating his vehicle over too far on his left-hand side of the highway; that the trial court properly submitted plaintiffs' case to the jury; and that the trial court did not err in overruling defendant's motion for a directed verdict.

(2) It is contended by defendant-appellant that the trial court erroneously permitted plaintiffs' witnesses to give their opinions and to draw conclusions when the witnesses had not qualified as experts and when the subjects of the particular inquiries were not proper matters for opinion evidence, or were conclusions invading the jury's province. This contention is ruled adversely to defendant-appellant.

Generally, the testimony, of which defendant complains, was that of the witness Donald R. Mead, a driver of heavy combination truck equipment for ten or twelve years. Much of the now complained of testimony of the witness was admitted without objection. For example, there was no objection to the question of plaintiffs' counsel eliciting the answer that the debris on the north side of the pavement "looked fresh," and there was no objection to the question eliciting the answer that the easterly dual wheel marks "were fresh." The trial court sustained defendant's objections to some of the questions, and defendant now contends plaintiffs' subsequent proffers of proof, having been made in the presence of the jury, were prejudicial; but defendant, at the time, did not request the court to take any action other than to sustain the objections to the evidence offered, which objections, as stated, were sustained. Sometimes the objections were not timely, and apt as to the grounds therefor which defendant now urges. For example, the question was asked the witness, "Describe those marks (the easterly dual wheel marks) to the jury." The witness answered, "There was skid marks of dual wheels." After the answer, defendant objected "to that as a conclusion of the witness unless he knows that they were made by this particular truck at this particular time." Plaintiffs' counsel said, "I can connect it up. Of course I have to take it step by step." The trial judge said, "I appreciate that. I will overrule the objection." Much of the testimony of which defendant now complains was elicited by defendant's counsel on cross-examination of the witness. For example, defendant's counsel brought out that the easterly marks "hadn't been driven over." In another instance, counsel for plaintiffs asked the witness what the "second set of dual marks * * * looked like on the surface." Defendant's counsel objected, stating, "The man has not been properly qualified as an expert." The objection having been overruled, the witness answered, "Well, they looked like just a skid mark on a sharp left-hand angle." In connection

with the last objection, it is apparent defendant's counsel considered the subject of the question to be a matter for expert testimony, and, if indeed it was a matter for expert opinion, the witness had been shown to have been a driver of tractor-trailer equipment with ten or more years experience.

However, we are of the opinion that the testimony of which defendant complains was not objectionable on the ground of the lack of qualifications of the witness as an expert, or on the ground the testimony was a conclusion. The witness was not giving "opinions" in a true sense, Silsby v. Hinchey, Mo.App., 107 S.W.2d 812, nor was he stating conclusions in an objectionable sense. The answers of the witness were statements of his "cause and effect", "matter of fact" comprehension of things he had seen which were like those he had often personally observed in the ordinary experiences of everyday life. His answers were opinions or conclusions in a sense, but they were not all objectionable for that reason. In many cases where the thing a witness has seen is impossible or difficult of description to a jury precisely as it appeared to the witness at the time he saw it, the nonexpert witness may properly testify in a comprehensively descriptive manner which is in a sense an opinion, or a conclusion ordinarily within the province of the jury. It would seem it is of greater aid to the jury for him to say it that way, because the nature of a thing, difficult of description, may be more clearly conveyed to the jury that way than if the witness were obliged to use verbiage meticulously describing the minute physical aspects of the thing. Merritt v. Kinloch Telephone Co., 215 Mo. 299, 115 S.W. 19; Annotation, 23 A.L.R.2d 112, at page 138; Vol. VII, Wigmore on Evidence, 3d Ed., § 1924, pp. 22–23. See also Kennedy v. Union Electric Co. of Missouri, 358 Mo. 504, 216 S.W.2d 756.

(3) Having hypothesized plaintiffs' right to maintain the action in the first paragraph of plaintiffs' principal verdict-directing Instruction No. 2, the trial court submitted plaintiffs' case to the jury as follows:

"* * * And if you further find from the evidence that on said date Willard Brawley was driving a certain truck west along U. S. Highway 166 * * *, and was at all times mentioned herein in the exercise of the highest degree of care in the operation of said truck, and if you further find that at said time and place Samuel Ward was driving a DeSoto automobile east along said highway and that said vehicles were approaching each other from opposite directions on said Highway;

"And if you further find from the evidence that as said vehicles approached each other that Samuel Ward failed to keep said DeSoto automobile as close to his right hand side of said highway as practicable and failed to turn said automobile to his right of the center of the highway so as to meet and pass the truck driven by Willard Brawley without interference and that Samuel Ward drove said DeSoto automobile across the center of said highway onto Willard Brawley's side of said highway and into the path of Willard Brawley's truck as said vehicles were approaching and meeting each other on said highway, and that said vehicles collided on Willard Brawley's side of the highway, if you so find, and if you find by reason of the foregoing that Samuel Ward failed to exercise the highest degree of care in the operation of said DeSoto automobile and was thereby negligent and that as a direct and proximate result of the negligence of Samuel Ward as aforesaid, if you find he was so negligent, said vehicles collided and Willard Brawley thereby burned to death in his truck, and that plaintiffs were damaged by reason thereof, then you are instructed that your verdict should be in favor of the plaintiffs and against the defendant."

Defendant-appellant contends the instruction "does not require the jury to find specific facts as the basis for its charge of assumed negligence on behalf of defendant's decedent, permits the jury to speculate, submits a mere conclusion of law and goes beyond the evidence in the case and con-

tained inflammatory matter." More specifically, defendant argues that the instruction is erroneous in that the instruction did not hypothesize and the jury was not required to find in detail the circumstances from which the jury was permitted to draw inferences upon the ultimate issues of actionable negligence. For example, defendant argues the instruction should have hypothesized and required the jury to find the skid marks identified by the witness Mead as being fifty feet long and on the north side of the pavement were made by the left rear wheels of the trailer of the combination vehicle driven by Willard Brawley.

█ The instruction submits the circumstances of the approach of the two vehicles to the scene of the collision. The essential ultimate facts—negligence (in the specific respects as conjunctively submitted), causation, and injury—were submitted to the jury by the instruction. The jury was required to find these facts from the evidence. The ultimate issue of negligence of defendant's decedent in this case was really dependent upon the underlying simple factual issue of whether defendant's decedent was operating his motor vehicle too far over on his left-hand side of the highway. In this case there were no inconsistent factual theories or divergent sets of facts under only one of which could the defendant's decedent have been negligent as submitted. In our opinion it was unnecessary in this case to particularly hypothesize the underlying evidentiary, or circumstantial bases for the inference that defendant's decedent was negligent. We believe the instruction fairly and clearly submits the facts necessary to plaintiffs' recovery to the jury. Hooper v. Conrad, 364 Mo. —, 260 S.W.2d 496; Block v. Rackers, Mo.Sup., 256 S.W.2d 760; Brewer v. Rowe, 363 Mo. 592, 252 S.W.2d 372; Knight v. Richey, 363 Mo. 293, 250 S.W.2d 972; Sommer v. St. Louis Public Service Co., Mo.App., 262 S.W.2d 335; Wirth v. St. Louis County Transit Co., Mo.App., 253 S.W.2d 547.

█ It has been noticed that the instruction submits that said vehicles collided and Willard Brawley thereby *"burned to death"* in his truck. Defendant-appellant argues that the hypothesis that plaintiffs' decedent "burned to death" is completely outside the evidence, is highly prejudicial and inflammatory and was included only for the purpose of arousing the sympathy of the jury in favor of the plaintiffs and creating resentment against defendant's decedent. Particularly does defendant urge the hypothesis was unnecessary in view of the parties' stipulation that plaintiffs' decedent "met his death" as the result of the collision. The jury could not know whether plaintiffs' decedent was killed outright when the vehicles collided or whether he thereafter burned to death in the burning cab of the tractor. The jury could only infer that, if he was not killed outright in the collision, he must have perished by fire. The jury knew he came to his death as a result of the collision, and it would have been well for the instruction to have submitted that he "met his death" in the collision as the parties had stipulated. However, since his death was the result of the collision, it was immaterial in this case whether he was killed in the actual collision or thereafter burned to death in the burning tractor. And we cannot believe the submission that he burned to death was hypothesized with the purpose of enlisting the jury's sympathy, or that it carries with it a prejudicial effect necessitating the remand of the case. In this connection, we have found no instance in the whole transcript indicating that plaintiffs were exploiting the questioned hypothesized fact with the view of arousing prejudice against defendant, or of engaging the sympathy of the jury in favor of plaintiffs.

(4) In our review of defendant-appellant's contention that the trial court erred in overruling defendant's objections to improper, prejudicial and inflammatory argument, we must go back to the beginning of the trial proper. In his opening statement defendant's counsel referred to the inadequacy of the "known facts" tending to show how the collision occurred. He said there are few known facts in this case, "I might add, there are very few. * * * *"

And, near the conclusion of his statement, he said, "So, it is very difficult for me to get up here and try to tell you folks what actually happened because that is all the known facts we have been able to determine." At intervals during the trial, defendant's counsel expressed, "We want to bring out all the facts. * * * We just want the facts. * * * what I am trying to bring out is the facts."

In his opening argument to the jury plaintiffs' counsel said, "Those of you who have served on a jury realize, of course, that this is an unusual case because defendant has not put on any evidence. Those of you who haven't been on a jury may not realize how unusual that is, but all the evidence brought to you was evidence produced by the plaintiffs. In other words, the defendants have nothing. They have not been able to produce any evidence to bring to you to show that Willard Brawley was at fault. They have been unable, in two years * * *." In argument to the jury, defendant's counsel said, there had been some talk here "about us not producing any witnesses. There is a good reason for that. There is only one witness in this entire case that has any personal knowledge about how the accident happened and that is Mrs. Lunderman. * * * She testified for them when they called so why should we put her back on the stand? * * * I will venture to say we could bring five hundred people in here that know about that as much as the Pierces do or that truck driver does. Why do it? It is all negative. Nobody knows what happened." Arguing plaintiffs' case in rebuttal, counsel again referred to the "fact that defendant has not chosen to put in witnesses, that is their position, but we are the ones who brought in the witnesses," whereupon defendant's counsel objected to the repeated comment, "on our failure to call witnesses when there is no showing that those same witnesses were not just as available to the plaintiffs as to the defendant." These passages from the transcript of the arguments of counsel illustrate the lines of argument being pursued by the parties' counsel and the positions the parties were taking with reference to the facts tending to show how the collision came about. Plaintiffs' counsel was urging the facts and circumstances shown in evidence justified the inference and the inference was urged that defendant's decedent was negligent as submitted, whereas defendant's counsel was urging the facts and circumstances shown in evidence were so meager that nobody could determine how the collision occurred.

As we have stated supra, defendant did not introduce any evidence but rested at the conclusion of plaintiffs' case. Of course defendant had the privilege of doing this. And defendant's counsel also had the privilege of explaining to the jury why it was defendant did not put on any evidence which indeed counsel did undertake to do. But plaintiffs' counsel could legitimately comment on defendant's failure to introduce evidence and urge that, since defendant had not introduced any evidence tending to show the facts and circumstances of the collision or any evidence to support defendant's defense of contributory negligence, the facts and circumstances were as they were stated by the plaintiffs' witnesses, and that defendant had no defense. Johnson v. St. Louis Public Service Co., Mo.App., 256 S.W.2d 308; Smith v. Kansas City Rys. Co., 208 Mo.App. 139, 232 S.W. 261. The instant situation is different from those obtaining in the cases of Johnson v. St. Louis Public Service Co., 363 Mo. 380, 251 S.W.2d 70, and Belding v. St. Louis Public Service Co., 358 Mo. 491, 215 S.W.2d 506, cited by defendant-appellant. The St. Louis Court of Appeals in Johnson v. St. Louis Public Service Co., supra, 256 S.W.2d 308, differentiated that case from the Belding case and from the case of O'Donnell v. St. Louis Public Service Co., Mo.App., 246 S.W.2d 539, and such differentiation is also applicable to the case of Johnson v. St. Louis Public Service Co., supra, 363 Mo. 380, 251 S.W.2d 70. In this connection, we approve and adopt the language of the St. Louis Court of Appeals in the Johnson case, 256 S.W.2d at page 312, as follows, "The Belding and O'Donnell cases, supra, deal with a wholly different situation and

are not controlling here. In those cases counsel in effect accused defendant of withholding and failing to produce identified and existing witnesses known to and under the control of defendant (and inferentially unknown to, and not under the control of, plaintiff). Such an argument is reversible error for the reason that the inference of unavailability to plaintiff to be drawn from that argument is invalid because of the discovery provisions of the Code of Civil Procedure. No such accusation or inference is present or inherent in the instant situation."

It remains for us to consider other contentions of errors of the trial court in ruling on defendant's objections to the argument of plaintiffs' counsel. It is contended that plaintiffs' counsel repeatedly argued about extraneous matters; in rebuttal, misquoted defendant's counsel; and misquoted witnesses. Of the passages of plaintiffs' argument complained of, the trial court sustained defendant's objections in two instances. We have examined these passages and believe the trial court did not abuse its discretion in overruling defendant's further request to discharge the jury. In another, the trial court correctly ruled in overruling defendant's objection. Plaintiffs were urging legitimate inferences from the circumstances shown in evidence. In still another passage plaintiffs' counsel referred to "this fresh tire mark." He was arguing as follows:

"* * * In other words, these two marks, the eastern-most mark entirely north of the center line of the highway and this mark, the one that goes across the highway, made west of the debris and this fresh tire mark. Now, defendant's attorneys say they have five hundred witnesses they could bring in to testify to the same thing. That is exactly right. They would testify exactly to the same thing. Now, ninety percent of the debris was over on the north side of the highway. The fresh tire mark was on the north side of the highway * * *

"Defendant's counsel: Just a moment. We object to that argument about this tire mark. It has never been connected up with the automobile in question, is highly prejudicial, and we ask that the jury be instructed to disregard it and further ask that the jury be discharged.

"The Court: The objection is overruled.

"Defendant's counsel: The tire mark never was identified as being made by the car.

"The Court: Well, I don't agree with you on that. I had the testimony read to me."

Here we see that defendant's counsel, when he said, "The tire mark never was identified as being made by the (DeSoto) car," was arguing with the judge about his previous ruling in such a way as to invite the judge to rule that no evidence supported the conclusion that the tire mark had been made by the DeSoto. In our opinion the evidence, detailed supra, justifies the conclusion, as we have implicitly ruled, that the tire mark was made by the DeSoto. However, this was a conclusion to be drawn by the jury. But if the judge had no right to decide the question the litigant had no right to ask him to do it. The trial judge should have merely overruled the objection, but we are unwilling to reverse and remand this case upon error defendant invited, Goyette v. St. Louis-San Francisco Ry. Co., Mo. Sup., 37 S.W.2d 552, particularly where, as here, defendant did not object or otherwise request the trial court to take any action to purge the effect of the asserted error.

The judgment should be affirmed.

It is so ordered.

LOZIER and COIL, CC., concur.

PER CURIAM.

The foregoing opinion by VAN OSDOL, C., is adopted as the opinion of the court.

All of the Judges concur.