[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION ON MOTION FOR SUMMARY JUDGMENT OF DEFENDANT APPORTIONMENT DEFENDANT DEAN TINE
This case arises out of a traffic accident in which a car driven by Melinda Mallory crossed the center line of a highway and collided with a car driven by Dean Tine. Melinda Mallory was killed as a result of the accident. In the Tine vehicle, besides the driver, Mr. Tine, were two of his children. Colton Tine was in the front passenger seat and Seth Tine was placed in an unsecured child seat located on the floor between his father and his brother. As a result of the accident, Colton Tine was injured and Seth Tine was killed. Robin Tine, the children's mother, brought suit against Dean Tine on behalf of Seth and Colton as well as the estate of Melinda Mallory and Richard Geiler. The estate of Melinda Mallory in turn filed an apportionment complaint against Dean Tine.
In both the complaint brought by the mother, Robin Tine, and the apportionment complaint, it is alleged that Dean Tine violated § 14-257
(c) of the General Statutes which states in relevant part that "no person shall operate any vehicle upon a public highway . . . when the operator thereof is crowded or hampered . . . by reason of having in such vehicle CT Page 5310 more than the number of persons for whom reasonable and safe seating space is provided." Both of them also state that the Chevrolet van Tine was driving was a two passenger vehicle and that Mr. Tine was negligent by unreasonably placing three people in such vehicle." The only claim of negligence is based on this alleged violation of § 14-257 (a) of the General Statutes.
Dean Tine has now filed a motion for summary judgment directed against the claims of the plaintiff administratrix, Robin Tine, and the apportionment complaint. He argues that there is no genuine issue of material fact and that he is entitled to judgment as a matter of law with regard to the counts directed against him.
The principles governing the standards to be used in deciding whether such a motion should be granted have been often repeated in the cases. The evidence presented must be viewed in the light most favorable to the nonmoving party and, of course, the party advancing the motion must show the absence of any genuine issue as to material facts which would entitle that party to judgment. All of this is so because parties have a constitutional right to a jury trial; therefore, if there is a genuine issue as to a material fact, the court entertaining such a motion cannot decide it, see cases cited by defendants Kent Baker, administrator of the Mallory estate and Richard Geiler, Rivera v. AA Transportation, Inc.,248 Conn. 21 (1999), Harvey v. Bochringer Ingelheim Corp., 52 Conn. App. 1
(1999), Hyryniewicz v. Wilson, 51 Conn. App. 440 (1999). As pointed out in Horton and Knox, Connecticut Practice, Vol. 1A, p. 49 "there is still some reluctance to grant summary judgment in negligence cases," citingFogarty v. Rashaw, 193 Conn. 442, 444 (1984), but on the other hand, "granting meritorious summary judgments should be an integral part of the court's gate keeping function." Id. The whole point of having the procedure is to avoid the burden and expense imposed on parties where the claim made against them is not warranted under the law while also clearing from court dockets cases that are not viable so other meritorious matters can be more expeditiously handled.
What is the basis here for the motion for summary judgment?
The grounds for the motion for summary judgment are based on two affidavits submitted by Dean Tine. In those affidavits Tine makes a series of statements:
 (1) There was sufficient room between the driver's seat and the car seat in which the child Seth was located so that Tine could operate his van without any interference, crowding or hampering. CT Page 5311
 (2) Tine's ability to operate the van was never impeded in any way by Seth or Colton or the car seat or because there were three people in the van as opposed to two
 (3) Tine was not crowded in any way in operating the van by the two children or the car seat or because there were three people in the car not two
 (4) Tine was not hampered in the operation of his vehicle by the children or the car seat or because there were three people in the car not two.
 (5) The positioning and/or the seating of the two children did not in any way interfere with Tine's ability to operate the van.
 (6) Prior and at the time of the collision, Tine was able to operate all the van's controls, including the gas pedal, turn signals, horn, emergency brake, lights and steering wheel.
 (7) At the times just mentioned, there was sufficient room between his driver's seat and Seth's car seat so that he was able to operate all these controls without any interference.
 (8) At the times mentioned, Tine's view out of the car, including his view of the van's mirrors, was never restricted, blocked or affected by having Seth in the car seat.
 (9) At the times mentioned neither the car seat or Seth distracted Tine from driving or caused his attention to be diverted from operating the car.
Based on the affidavits submitted in his behalf, Dean Tine argues that he has made "an unambiguous showing" that he was not hampered or crowded in his operation of the van by having three people in the vehicle so there can be no liability under § 14-257 (a). Even in a negligence case, Tine argues, once affidavits establish there is no viable negligence claim the burden of explanation shifts to the plaintiff to set forth evidence which would preclude the granting of the motion for summary judgment. Popp v. City of Shelton, 1999 WL 711516 (Conn.Super.). A party opposing such a motion "must provide an evidentiary foundation to demonstrate the existence of a genuine issue of material CT Page 5312 fact." Suarez v. Dickmont Plastics Corp., 229 Conn. 99 (1994) and "mere assertions of fact . . . are insufficient to establish the existence of a material fact." Home Insurance Co. v. Aetna Life and Casualty Co.,235 Conn. 185, 202 (1995).
The motion for summary judgment is opposed on two grounds. First, it is argued that "conclusory statements by Mr. Tine in the affidavit submitted along with his motion for summary judgment that he was not `crowded or hampered' are not admissible and cannot be used as a basis for the court granting summary judgment in favor of Mr. Tine."
Secondly, there is alleged to be other evidence which raises a material issue of fact as to whether Tine violated § 14-257 (a).
This evidence comes from Tine's own expert, the expert retained to testify against Tine's position, and Tine's deposition testimony.
 (a)
In opposing the motion, counsel argues that the Tine affidavit should be stricken. The jury must decide whether liability has been established under § 14-257 but although "Mr. Tine can certainly testify as to what he recalls about the circumstances of the evening of the incident and the conditions inside the vehicle . . . it is for the jury and not for Dean Tine to draw the conclusion as to whether or not under the circumstances Mr. Tine was `crowded or hampered' in the operation of hisvehicle at the time of the incident," p. 9 of 11/1/2000 opposition brief); the wording of the statute makes the language just underlined by the court the touchstone as to whether there has been a violation of § 14-257 — that is the language that the statute uses in fact.
The Tine affidavits do more than paraphrase the language of the statute, however. The November 20 affidavit states that Tine could "fully operate all the controls" which included the gas pedal, turn signals, horn, emergency brake and steering wheel. It states there was sufficient room between his seat and Seth's car seat so he "was able to operate all the controls without any interference." His view out of the car was not restricted or blocked by the location of the child's car seat and his "ability to operate" the van was never impeded by this car seat or because there were three people in the van. Neither Seth's car seat nor the child distracted him from operating his car. All of these predicate statements of opinion cover the universe of what a jury would have to consider on the way to deciding whether under the circumstances of this case Dean Tine was crowded or hampered in the operation of the vehicle because more people were in the van than was reasonable and for whom safe seating was provided (see statutory language of § 14-257). CT Page 5313
Unlike the Federal Rules of Evidence, see § 704 of those rules, our § 703 takes a harsher view on the admissibility of lay opinion on the ultimate issue — our rule seems to place an absolute bar on considering such lay opinions by the trier of fact and, therefore, by the judge considering a motion for summary judgment (see commentary to § 703). Thus, it can be argued that the court should not consider those paragraphs of the Tine affidavit that contain the not crowded or hampered
in the operation of the vehicle language which is the very language that § 14-257 uses and may thus be defined as the ultimate issue that has to be decided in this case; the court will accept this position. But other statements in the affidavit regarding ability to use various controls, observe out of the car, and operate the car, do not explicitly express the "legal conclusion" that § 14-257 requires any trier of fact to find — that the operator was "crowded or hampered". Yet they are directly related to this ultimate issue and can provide appropriate predicate facts on which to decide, one way or another, the ultimate issue which § 14-257 defines here as being whether the operator was crowded or hampered in driving the vehicle because of the reasons set forth in the statute. Or to put it another way, if these allegations regarding use of controls, ability to observe and operate the car, can be properly made, since they seem to encompass the field of what can be considered in deciding whether an operator was crowded or hampered in driving a motor vehicle, then crowding and hampering is established at least on a prima facie basis. The burden of explanation would then shift to the party opposing the summary judgment to show, despite Tine's opinions, that there is a genuine issue of material fact which prevents the granting of this motion; cf. Burns v. Hartford Hospital, 192 Conn. 451,455 (1984). This can be done by submitting counter affidavits or other evidence to the effect that (1) the concept crowded or hampered in a motor vehicle's operation refers to more considerations than those raised by statements concerning no impaired ability to use various controls, view out of the car, or generally operate the car, or (2) in various specific ways the ability of Tine to operate his car was in fact crowded or hampered by reference to other considerations not mentioned by Tine — for example, the location of the car seat made it physically impossible for Tine to access the gas pedal because its measurements were such that it covered the pedal or made access to it difficult.
From this perspective, then, the court must initially determine whether the statements in the Tine affidavits, apart from references to his not being crowded or hampered are proper subjects of lay opinion; those opinions being that he could fully operate all the car's controls, there was sufficient room so he was able to operate controls in the car, he was not distracted, he had the ability to operate his car in an unimpeded way despite the car seat and the presence of Colton. What are the tests to CT Page 5314 determine if lay opinion such as this may be received. The court could find no case in Wigmore, McCormick or generally in our state that addresses the problem in the factual context now before the court but general language from a leading Connecticut case and two other non Connecticut cases is helpful.
In Atwood v. Atwood, 84 Conn. 169, 172-73 (1911), the court said that a lay witness giving an "opinion" must show that he (or she) had the means and opportunity for knowledge . . . When . . . a subject is relevant to the matter in suit, and the lay witness has had the means and opportunity of acquiring knowledge of the subject through use of his (or her) senses, and the impression or opinion is formed from constituent facts and conditions which are so numerous or so complicated as to be incapable of separation, or so evanescent in character they cannot be fully recollected or detailed, or described, or reproduced so as to give the trier the impression they gave the witness, or so as to enable the trier to draw a fair inference from such facts and conditions — he (or she) may be permitted to testify to the impression or conclusion obtained by him from them, leaving it to the cross-examination to develop the foundation for the impression or conclusion."
A Missouri case offers a concise statement of the general common law rule. In Brawley v. Esterly, 267 S.W.2d 655 (1954) the court says at p. 662:
 "The answers of the witness were statements of his "cause and effect", "matter of fact" comprehension of things he had seen which were like those he had often personally observed in the ordinary experiences of everyday life. His answers were opinions or conclusions in a sense, but they were not all objectionable for that reason. In many cases where the thing a witness has seen is impossible or difficult of description to a jury precisely as it appeared to the witness at the time he saw it, the nonexpert witness may properly testify in a comprehensively descriptive manner which is in a sense an opinion, or a conclusion ordinarily within the province of the jury. It would seem it is of greater aid to the jury for him to say it that way, because the nature of a thing, difficult of description, may be more clearly conveyed to the jury that way than if the witness were obliged to use verbiage meticulously describing the minute physical aspects of the thing.
In State v. Cox, 250 S.E.2d 259, 261 (N.C., 1979) the court further CT Page 5315 refines the things to consider by saying:
 "The practical test for receiving or rejecting the opinion of a lay witness is that when the jury can be put into a position of equal vantage with the witness to form an opinion, the witness may not ordinarily give opinion evidence.
Perhaps most illuminating is the discussion in Weinstein's FederalEvidence, 2d Ed, Vol. 4, pp. 701-5, et seq where he discusses Rule 701 of the Federal Rules of Evidence entitled "Opinion Testimony by Lay Witnesses" — our code of evidence has the same number, title and language as the federal rule. The court will now directly quote from Weinstein at pp. 701-7 through 701-15, Sections 701.03-701.05.
 1. "The first limitation placed on lay opinion testimony by Rule 101 is that the opinion must be based on the personal perception of the witness. The witness must be testifying from some combination of his or her own personal observation, knowledge and past experience . . .
. . . .
 2. (such testimony also) must be `rationally' based on the perception (of the witness). . . . In general, courts use an objective "reasonable person' test to determine whether the rational basis requirement is satisfied. Whether a reasonable person would form the opinion reached by the witness on the basis of the perceived fact is determined on a case by case basis
. . . .
 3. Lay testimony must be helpful to either a clear understanding of the witness's testimony or the determination of a fact in issue . . . to determine `helpfulness' the trial judge will consider a number of overlapping factors including the following
 (1) Whether the lay witness is in a better position than the jury to form the opinion.
 (2) Whether the witness has specialized knowledge that the jury does not have. CT Page 5316
 (3) Whether a bald rendition of the facts is insufficient to convey the complete situation to the jury.
 (4) Whether the witness is speaking in a way that is perfectly natural and comprehensible, for example, `Jones looked sick to me'."
(Emphasis and numbering added by court.)
Weinstein in effect summarizes the holding of Atwood and the two other common law cases cited previously. Applying these tests should the court consider the opinions offered by Tine in his affidavit about his ability to operate his van unimpeded by Seth's seat or Colton's and Seth's presence, view out of his car, and reach and use various controls in his car?
The answer seems fairly obviously yes. Tine's statements in this regard are only based on his personal perception of the situation he found himself in at the time of the accident. His statements seem to berationally based on his actual perceptions in that they do not involve speculation or guess work but perceptions he could gather while he was, in fact, actually operating his car — the operation of which, location of controls and mirrors enabling him to view outside would be known to him, i.e. it's his car. The testimony would be helpful — obviously Tine would be in a better position to reach conclusions as to these representations than any member of the jury — he was sitting in the driver's seat of a car he owned and could be presumed to be familiar with. No "bald rendition" of facts "such as distances from driver's seat to child car seat, from driver's foot to various peddles, driver's line of site to various mirrors could possibly be sufficient "to convey the complete situation to the jury." As noted in Atwood, the "constituent facts and conditions" to convey Tine's impressions are so numerous" and "incapable of separation," how else could his belief that he had the ability to drive unimpeded, make observations, and reach his controls be conveyed to him by the jury.
The court will accept Tine's representations and can rely on them to establish at least a prima facie case that his operation of the vehicle was not crowded or hampered by the location of Seth Tine's car seat, or the fact that Seth and Colton were in the car along with Mr. Tine although the vehicle only had two car seats. Is there any other evidence which raises a material issue of fact precluding the granting of this motion?
What substantive evidence has been offered in opposition to the motion CT Page 5317 in light of the Tine affidavit? The court has been presented with excerpts from the affidavits of Robert Mantho, an expert retained by Mr. Tine, Mr. Plante, an expert retained by the opponents of this motion and Dean Tine. What must be emphasized in this discussion is that the only allegation of negligence as to Dean Tine involves a claim under §14-257 of the General Statutes. In other words, there is no general allegation that Tine failed to keep a proper lookout, failed to apply his brakes in time to avoid a collision or failure to turn his car when he could have done so to avoid a collision. If those allegations had been made, even in the pleadings, the court might very well have had to deny this motion based on what has been presented by way of the Tine affidavit, see Fogarty v. Rashaw, 193 Conn. 442, 444-446 (1984).
In opposition to the motion, the deposition testimony of Robert Mantho is relied upon. He is an expert retained by Mr. Tine. Mr. Mantho described the seats in the car; there were two and they had seat belts and safety restraints. Mantho said there was a car seat in the Tine vehicle described as a child restraint system. This was the seat Seth was in, it was unsecured according to Mantho's understanding. Mantho further testified that if the car seat's child restraint system could not be secured to the vehicle in his opinion as a forensic engineer, only two people could ride in the car with reasonable safety. He concluded that only two people could be in the vehicle and be reasonably safe when on the road.
Insofar as reference to Mantho's deposition testimony invites the court to consider the failure to use a child restraint system as a reason to deny the motion for summary judgment, this would seem to be impermissible under the explicit language of § 14-100a(d).
But perhaps even more fundamentally nothing Mantho is referenced as saying has any bearing on whether the provisions of § 14-257 were violated. Mantho does not explicitly say or inferentially suggest that the safety concerns he alluded to have anything to do with causing an operator like Tine to be "crowded or hampered" in the operation of the vehicle. Mantho's testimony can be characterized as conclusory and does not even attempt to convert affidavits concerning his ability to operate the vehicle.
The motion is also opposed by reference to Mr. Tine's deposition. Tine noted that Seth was located in an unattached car seat in his two passenger seat vehicle. He stated he could reach the driver's seat from CT Page 5318 where he was sitting and the space between his driver's seat and the car seat was four inches. Tine stated that when the accident happened he cannot remember whether he was looking straight ahead or what he was doing. Although conditions were clear he did not know where the other car came from and he only saw it a split second before impact and had no time to react. Counsel argues at page 12 of his brief that this testimony shows Tine "was not paying attention or he was distracted." It is further argued that a violation of § 14-257 can be shown "if the jury decides that this distraction was due to the placement of Seth Tine in a loose car seat next to Dean Tine . . . this factual dispute should be decided by the jury and not by the court."
The problem with this analysis is that § 14-257 does not make it a statutory violation if there are simply more people in a car "than the number of persons for whom reasonable and safe seating space is provided." Liability only attaches for this last mentioned condition when, in effect, it causes the operator to be "crowded or hampered" in the operation of his or her vehicle on the highway. There has been no evidence presented here that that was the case from Tine or anyone else. Dean Tine's affidavit states the contrary and no expert evidence has been presented that, for example, given the position of Tine in his seat in relation to the steering wheel and the length of his arms that the four inch distance to the car seat would have interfered with his ability to turn the car to the right or left. No evidence has been presented that the location of the car seat prevented access to brake or gas pedal or other controls or blocked Tine's view. The court does agree that, in the appropriate case, having more people in a vehicle than the number of persons for whom reasonable and safe seating is provided, could distract the operator and "hamper" the operator in driving the vehicle — again such crowding could block a driver's view or present problems as to available space to perform driving functions which could confuse the operator. But there is no physical evidence of that here. The presence of any young child in a car, whether in a secured child seat or in a regular seat with a booster pillow could present a distraction by the noise they make, their unpredictable movements, or their cuteness which could be an object of contemplation. But there is no evidence presented here that the closeness of the car seat had anything to do with abetting any such distraction, that, in fact, there was any such distraction, or that the child Colton somehow presented a distraction in some of the ways just mentioned. As counsel for Tine argue any jury decision basing a finding of distraction and thus hampered ability to operate the vehicle on the location of the car seat would have to be based on pure speculation. The fact that the car seat was unsecured would not be a consideration removing such a decision from the area guesswork even if it were to be a consideration the jury could take into account in light of the provisions of § 14-100a(d) which makes failure to use a child restraint system a CT Page 5319 factor that cannot be considered by a jury and thus a judge on a motion for summary judgment. The jury would have to guess or engage in speculation to find Tine responsible under § 14-257. Webster's Third International Dictionary says "guess" means: "to form a judgment or opinion without the means of knowledge"; "speculation" means "(2) reasoning or theorizing about a matter that transcends experience and does not admit of demonstration." Black says speculation is "the act or practice of theorizing about matters over which there is no certain knowledge.
The opposition to the motion is also based on the deposition testimony of Peter Plante, an accident reconstruction expert. Plante testified that Tine had several seconds to observe the Mallory vehicle and avoid it "if he had been paying attention"; he opined that Tine was probably not paying attention to road conditions. Mr. Plante said Mr. Tine only had two options, not transport Seth because there was no seat or secure the seat permanently to the floor of the vehicle. Plante also said that if Seth had been properly belted in a secured seat he would not even have received severe injuries. According to Plante, with headlights on and a painted center line, Tine should have seen Mallory's car and could have avoided it "if Dean Tine was using reasonable care" (p. 14 of 11/1/01 brief).
From all of this the brief goes on to argue that "the jury can conclude that the placement of the car seat with Seth Tine in it did "hamper' the operation of the vehicle by Dean Tine." The jury is "free to infer that the reason (Tine) was not paying attention was that he was concerned about his son in a loose car seat and this averted his attention away from the roadway."
The problem remains; although a jury is entitled to and a trial court hearing a motion such as this may rely on circumstantial evidence based on reasonable inferences, jury or judge cannot resort to guesswork or conjecture under the guise of relying on such evidence. There is nothing in Mr. Plante's deposition testimony which would allow the jury or this court to not just conclude Mr. Tine was inattentive but then to further conclude that the unattentiveness was brought about by a violation of § 14-257 on the basis that Tine was crowded or hampered because of the placement of the car seat. The allegation against Tine does not lie in common law negligence but is based on a specific allegation of a violation of § 14-257.
The motion for summary judgment is granted.
Corradino, J. CT Page 5320