JULIUS FILKINS, Guardian and Curator of EUGENE MOSES, a Minor, Appellant, v. CLARENCE LEE SNAVELY and SUPERIOR FORWARDING COMPANY, Respondents, No. 40943—221 S. W. (2d) 736.

Division One, June 13, 1949.

Motion for Rehearing or to Transfer to Banc Overruled, July 11, 1949.

*Dearing & Matthes* and *M. C. Matthes* for appellant.

*Walther, Hecker, Walther & Barnard* and *Harold F. Hecker* for respondents.

HYDE, J.—Action for wrongful death; verdict for plaintiff for $10,000.00. The Court granted a new trial upon the grounds that the Court should have directed a verdict for defendants; that the Court erred in giving Instructions 1, 2 and 6 offered by plaintiff; that the Court erred in refusing Instructions A and B offered by defendants; and that the Court erred in refusing to instruct the jury on the law of emergency. Plaintiff has appealed from this order.

On the issue of directed verdict, the question is whether plaintiff made a jury case of negligence of defendant's driver in failing to keep as close as practicable to his right-hand side of the highway. We think plaintiff made a submissible case. The following facts appear from the evidence considered most favorably to plaintiff. The mother of the minor plaintiff was killed in a collision between a

Plymouth coupe, in which she was riding with Thomas L. Hayes (also killed in the collision) and a tractor-trailer transport driven by defendant Snavely, who was the only surviving eyewitness. The collision occurred on a curve about four miles south of Festus on Highway 61-67 about 8:40 P. M. on May 15, 1947. The general direction of the highway was north and south. The coupe was travelling north and the transport was going south. The curve was to the east (to the left) for southbound traffic and it was possible for southbound drivers to see a quarter of a mile beyond it. Northbound drivers could see through the curve about 300 yards. The slope of the highway was a little downgrade to the north. The pavement was eighteen feet wide and was dry at the time of the collision but it started raining soon afterward.

Both vehicles came to rest on the east side of the highway. State Patrolmen who came soon after the collision found broken glass, dirt, debris and oil spots on the east half of the highway. There was a freshly gouged out place about four inches long, two feet ten inches east of the center line of the highway and there were scratches leading back from it toward the coupe. This mark dug deeper into the mud and gravel of the east shoulder and led to the front of the coupe. Its left front wheel was broken off and these marks appeared to have been made by its axle. Nothing was found on the west half of the pavement. The coupe was against the fence, which paralleled the highway on the east side. Its left rear wheel (which was its nearest part to the highway) was 15 feet 2 inches from the east edge of the pavement and it was 47 feet 4 inches from the gouged place in the pavement. The transport (which was about 40 feet long and with its load weighed about 45,000 lbs.) extended about seven feet on to the east half of the pavement. The rest of the transport was off the pavement at an angle of about 35 degrees to the southeast, with its tractor on top of the coupe. Photographs in evidence show the character and extent of damage to each vehicle (which was also described in detail) and indicate that it was the left front parts of each vehicle that came in contact.

We think these physical facts and surrounding circumstances with the inferences that might reasonably be drawn from them are sufficient to make a jury case on the negligence submitted, at least with the statements of the driver in his testimony hereinafter referred to, that he did not swerve to the left before the collision. [See Ruby v. Clark, 357 Mo. 318, 208 S. W. (2d) 251; Payne v. Reed, 332 Mo. 343, 59 S. W. (2d) 43.] Defendants rely on Schoen v. Plaza Express Co., (Mo. Sup.) 206 S. W. (2d) 536. However, the evidence in that case was much different. The vehicles involved were found on opposite sides of the highway and tracks made by the transport appeared on the east shoulder of the highway which was the right side for this northbound vehicle. Furthermore, the contact in that case was with

the side of the tractor at an angle and not with the front end thereof; but most important, there were no such markings of the place of the collision as the gouge east of the center line in this case and the scratches leading directly from it to the broken front axle of the coupe. In the Schoen case there was not sufficient circumstantial evidence to show that defendant's vehicle was being operated so as to extend over the center line of the pavement; but, in this case, our conclusion is that there was. Defendants' complaint against plaintiff's instructions is based only on the ground of failure to make a submissible case on the negligence submitted. Therefore, we must hold that the order of the Court cannot be sustained on the grounds that the Court should have directed a verdict or that it erred in giving the instructions requested by plaintiff.

However, we think this order was proper on the ground that the Court erred in refusing to instruct the jury on the law of emergency. Defendants' Instructions A and B submitted this defense. Instruction A was as follows: ''The Court instructs the jury that if you find that on the occasion mentioned in evidence defendant was driving his tractor, without negligence on his part, over and along the west half of Highway 61 near the curve mentioned in evidence, and that defendant was suddenly confronted by an automobile in which Irene Moses was riding, approaching him upon the west side of said highway and in such close proximity that the defendant did not have sufficient time to determine with certainty the best and safest course to pursue, and *that he turned his tractor to the left to avoid the collision,* and that in so doing, if you so find, defendant exercised such care as a very prudent and careful driver would have exercised under the circumstances then and there existing, then, if you so find, defendant Snavely was not negligent in failing to keep said tractor and trailer as close as practicable to his right-hand side of said highway, if ▮▮▮ you so find he did, and plaintiff is not entitled to recover of defendant on the assignment that defendant negligently failed to keep said tractor and trailer as close as practicable to his righthand side of said highway.'' Instruction B was similar, although it hypothesized the facts as to the speed and position of the vehicles in more detail, but in place of the above italicized words it submitted that ''Snavely *attempted* to turn or swerve his tractor and trailer to the left side of the highway to avoid colliding with the automobile.''

Plaintiff argues that these instructions were properly refused because there was no evidence to support them. Plaintiff says that the evidence shows that the coupe was on the east side of the highway while defendant's transport was actually being operated across the center line; and that Snavely's own testimony was contrary to the theory submitted by these instructions because he stated that he did not swerve to the left before the collision. However, plaintiff is not

considering this evidence from the viewpoint most favorable to defendant as the jury could have done on a proper submission.

At the scene of the collision, the State Patrolmen said Snavely made the following statement, which one of them wrote in his notebook at the time: "He was on my side of the highway, so I cut to the left to avoid him, but he seemed to wake up just at this time and cut back and we hit head-on." There was other testimony as to similar statements, made by him that night, fixing the place of the collision on the east side of the road and giving the same reasons for the collision. However, at the trial, he said he did not remember saying that it happened on the east side.

Snavely testified at the trial that he was driving about 30 miles per hour and that the coupe was going 50 to 55 (he also said that it could have been 40 to 45) but that he could not see (because of the curve) that the coupe was on the west side of the road until they were about 60 feet apart. He said he immediately applied his brakes and "just started to cut to the left"; but that "it looked like when he got within just a few feet of me he saw where he was at, or woke up, and tried to cut back to his side of the road." His opinion was that his left front wheel, at the moment of impact was "just about the center line"; and he said: "I was more on my right side of the road than the Plymouth." On cross-examination, he said the collision occurred on the west side of the road; that he did not swerve to the left "just started to cut, that was all"; but he also said "I might have cut before we struck." He further said: "I just got started to cut to the left. I had no time. He was too fast"; but also said: "I could have cut my equipment . . . that was my intention, but that all happened so fast I only had a second or two when I saw where the man was at." He explained his statement that he did not swerve to the left by saying: "Swerve and cutting I figure is quite a bit different."

Defendant also had the evidence of two witnesses who described tracks they saw on the pavement just after the collision. They said these tracks were on the west side of the pavement and then curved to the left leading toward where the vehicles were found; and "it looked as though the tracks had made a left-hand turn."

On the issue of whether defendants were entitled to an instruction submitting the defense of turning to the left in such an emergency, we must consider the evidence most favorable to defendant. While Snavely was very indefinite about what actually happened, we think his testimony taken as a whole, together with the evidence as to the course of the tracks observed by defendants' other witnesses, was sufficient to warrant the submission of Instruction A. "Under appropriate circumstances a motorist meeting another automobile may turn to the left." [Lewis v. Zagata, 350 Mo. 446, 166 S. W. (2d) 541 and authorities cited; see also Borrini v. Pevely Dairy Co., (Mo. App.) 183

S. W. (2d) 839.] An instruction similar to Instruction A was approved in the Lewis case. However, Instruction B, while it better hypothesizes the facts, does not really submit this defense, because it is based on what Snavely attempted to do rather than upon what the evidence tended to show that he did. What he attempted to do but did not actually do would be immaterial. Thus Instruction B is confusing and misleading because it dodges the issue by failing to submit either that he stayed on the right side of the road or went to the left by reason of the coupe being on the wrong side.

The order granting a new trial is affirmed and the cause remanded. All concur.