Leona JUSTICE, Appellant,

v.

Burnice Eugene MALIN, Respondent.

No. 47671.

Supreme Court of Missouri,

Division No. 1.

May 9, 1960.

Rehearing Denied June 13, 1960.

Donnelly & Donnelly, David Donnelly, Robert T. Donnelly, Lebanon, for appellant.

Keyes, Bushman & Hearne, Sam Bushman and John L. Hearne, Jefferson City, for respondent.

HOLLINGSWORTH, Judge.

Upon trial in the circuit court the jury returned a verdict in favor of plaintiff, Mrs. Leona Justice, in the sum of $17,-000, for the alleged wrongful death of her husband, Pearl Justice, caused by a head-on collision between an automobile driven by him and an automobile driven by defendant, Burnice Eugene Malin, on Highway BB in Camden County. The

trial court, on motion of defendant, set aside the judgment rendered in accordance with the verdict and entered judgment in favor of defendant on grounds that "the plaintiff failed to adduce sufficient and substantial evidence to make a case for the jury and that it erred in overruling defendant's motion for a directed verdict * * *." Plaintiff appealed.

There were no witnesses to the collision other than the operators of the two cars. Plaintiff's husband died instantly or shortly following the collision. Defendant suffered a cerebral concussion, resulting in his immediate unconsciousness and a total lapse of memory of the collision and all other events for a period of three days antedating it and for three weeks thereafter.

The collision occurred between 6:30 and 7:00 o'clock on the morning of March 19, 1958, on Highway BB as it extends southward from Montreal in Camden County. Plaintiff's decedent was driving his car northward. Defendant was driving his car southward. The cars collided on the west side of the highway at the crest of a hill. Plaintiff's case was submitted upon the general theory that although the collision occurred on plaintiff's decedent's left (west) side of the highway, yet plaintiff's decedent, in the exercise of due care under the circumstances shown, had diverted his car to that side to avoid defendant's southbound car, which shortly prior to the collision defendant had negligently driven along his left (east) side of the highway. Plaintiff insists that the physical facts warrant a finding in her favor upon that theory and that the final judgment rendered by the trial court should be set aside and the cause remanded with directions to reinstate the verdict and to render judgment in accordance therewith. In determining the question thus presented, we review the evidence most favorable to plaintiff.

Highway BB, a farm-to-market road, is of loose gravel construction, 22 feet in width. A windrow of gravel four feet in width occupied the extreme west side of it,

thereby reducing the portion available for travel to the east 18 feet thereof. Two hills, over which the roadway courses, play an important part in determination of the issue here presented. These will be referred to respectively as the "south hill" and the "north hill." The south hill is the higher of the two. Between them there is an area referred to as a "hollow." On the morning of the collision, these hills, the approaches thereto and the hollow between them were covered with a coating of ice, over which was a thin layer of snow, making the entire roadway "slippery." Both plaintiff's decedent and defendant lived in the general vicinity and were well acquainted with the course and varying elevations of the roadway.

Within a short period of time after the collision, several neighbors and a highway patrolman appeared on the scene. The cars were together head-on on the west side of the traveled portion of the roadway at the precise crest of the north (lower) hill, adjacent to the gravel windrow. Decedent's car was facing north, defendant's car facing south. The debris and damage done to the cars indicated violent collision.

The tracks made by the two cars as they had approached the point of collision were plainly discernible from some distance. The evidence showed that defendant's car, as it came southward toward the crest of the north (lower) hill on which the collision occurred, was on the east side of the roadway from a point 200 yards north of the crest of the hill to a point within about 50 yards of its crest, at which point his car veered to the west and had reached the west side of the road at the point of collision. Measurements of the positions of the cars at the point of collision showed that the left wheels of defendant's car were 9½ feet from the west edge of the traveled portion of the highway and that the left wheels of decedent's car were at the west side of the traveled portion and the right wheels were near the center of the roadway. Debris and blood were found to extend from the windrow of gravel to the center of the

roadway. The tracks of decedent's car, which admittedly had come northward over the crest of the south (higher) hill, showed that it had come along the east side of the roadway until it reached a point in the hollow 40 to 60 feet south of the crest of the north hill on which the collision occurred, at which point the ice and snow were "torn up." From that point his car had swerved toward the west side of the roadway to the point of collision.

Plaintiff sets forth certain evidence developed on cross-examination of two of defendant's witnesses as being favorable to her theory of the case: (1) Defendant testified that a person standing on the south (higher) hill and looking north could see beyond the crest of the north (lower) hill a point 200 feet to the north of the crest of that hill, but the witness explained that he meant "not immediately over, but back a ways you can." (2) State Patrolman Rider, viewing a photograph shown him by plaintiff's counsel, explained that standing on the south hill and looking north to the north hill and beyond its crest "you could see down over the road north on BB a considerable distance. However, I believe that [the crest of the north hill] will block out the vision just under the hill crest" of the north hill; and further:

"Q. Now, all I want to know is if you would tell the jury you could stand on that higher hill and look north and see on the other side of the crest of the north hill. You see what I am getting at? A. Yes, I see what you are getting at, yes, sir, and my best recollection is that if you are here sitting in an automobile that an automobile coming toward you would be blocked by the hillcrest [of the north hill] at some point.

* * * * * *

"Q. You don't know exactly where? A. I believe it would go out of sight; I don't know where, no, sir."

The photograph shown the witness and introduced in evidence by plaintiff showed that one standing on the south hill and looking north could see the crest of the north hill and for *some* distance immediately beyond the crest, but the extent of that distance cannot be determined from the photograph and there is no evidence from which it may be estimated.

■ Plaintiff contends that the evidence showing that defendant, as he came southward, traveled on the wrong (east) side of the highway for a distance beginning 200 yards north of the point of collision to a point 50 yards north thereof, at which time he began to swerve back to his right (west) side of the highway and had just reached the west side at the point of collision, bespeaks defendant's negligence and that that fact alone makes a submissible case of negligence against him, citing Section 304.015 RSMo 1949, V.A.M.S.; Wines v. Goodyear Tire and Rubber Co., Mo.App., 246 S.W.2d 525, 529, and other cases and texts announcing the general rule that the failure of an operator of a moving vehicle to keep his vehicle upon the right half of the roadway in violation of the statute is negligence per se. Certain qualifications of the rule, which become pertinent to the issues here involved, are set forth in Wines v. Goodyear Tire and Rubber Co., supra, loc. cit. 528:

"There may be exceptional circumstances, however, in which the peremptory command of the statutory rule of the road may be required to yield to other considerations. For instance, at least under emergency circumstances 'a motorist meeting another automobile may turn to the left.' Lewis v. Zagata, 350 Mo. 446, 166 S.W.2d 541, 545 and cases cited; Filkins v. Snavely, 359 Mo. 356, 221 S.W.2d 736. And in Willhite v. City of St. Louis, supra, the court recognized that there are circumstances when it may become a jury question whether it is negligence for one vehicle to pass another on the right. In the Willhite case the court said, 224 S.W.2d loc. cit. 958: 'The rules of the road, established by

80 ■ 

the statute, must be given a reasonable construction and be reasonably applied to unusual or emergency circumstances.' In McGuire v. Steel Transp. Co., 359 Mo. 1179, 225 S.W.2d 699, 702, the court said: 'These rules of the road do not confer absolute rights, but impose reciprocal duties which may be qualified by the circumstances.' "

■ Even though defendant was guilty of negligence per se in not having the left wheels of his automobile completely on his right (west) side of the highway at the time he came to the crest of the hill on which the collision occurred, yet the evidence does not show with any degree of reasonable certainty that the collision would have occurred had plaintiff's decedent continued on his right (east) side of the road. In order to so find, the jury would have to infer that decedent, traveling on his right (east) side of the highway, would have driven so closely to the center of the traveled roadway as to come into contact with the slight portion of defendant's car extending to the east of the center thereof; the evidence showed that decedent still had eight feet of clearance on his right side. On the other hand, the evidence does show with absolute certainty that the collision was inevitable when decedent drove his car so as to place it completely on his left (west) side of the road at the crest of the hill.

These facts having been shown by plaintiff's witnesses, it follows that decedent was likewise guilty of negligence per se, which obviously constituted a proximately contributing cause of the collision, unless the evidence further showed an emergency created by defendant's course of travel which caused decedent, in the exercise of due care under the circumstances shown, to steer his car to the west in an effort to avoid the collision. Therefore, we must determine whether defendant's negligence was the sole proximate cause of the collision and, more important, whether plaintiff's evidence also shows that her decedent

was guilty of negligence and, if so, whether that negligence was a proximately contributing cause of the collision.

Plaintiff says that the jury could fairly infer that as decedent came to the top of the south (higher) hill he saw defendant's car approaching the north hill and that decedent applied his brakes, causing them to take effect in the hollow (where the ice and snow were torn up) 40 to 60 feet south of the crest of the north hill on which the collision occurred, and then swerved to the west and collided with defendant's car, which had "angled" to the west but was partially (6 to 12 inches) on the east half of the road. The difficulties with that contention are manifold. For instance, plaintiff's brief admits that: "No one can know for certain why Pearl Justice applied his brakes and then swerved or skidded to the west and into collision with defendant's car. We know that it is *possible* that Justice saw defendant on Justice's side of the road as Justice passed over the crest of [the south] hill and attempted to stop on the ice or turned to the west to avoid defendant who was approaching Justice on Justice's half of the roadway. Perhaps the slippery condition of the road contributed to the disaster." (Emphasis added.)

Actually, there is no evidence that decedent *applied* his brakes. The torn up ice and snow may have indicated an attempt to accelerate speed as he started to ascend to the crest of the hill or that it was torn up in obtaining traction. But more to the point: there is no evidence in this case whereby a reasoned inference may flow that either decedent or defendant saw or could have seen the other as they approached the point of collision. Determination of that fact depends upon the relative positions of their cars at one given time. There was only one moment when either could have seen the other as both approached the crest of the north hill on which the collision occurred. That was the moment when decedent's car was

at the crest of the south hill. At that moment, had defendant's car been *within 200 yards* of the crest of the north hill, and *not within the "blocked-out" space somewhere within that 200 yard area,* then each, *at that moment,* could have seen the other. But the record is devoid of any evidence whatever as to where defendant's car was at the moment decedent's car passed over the crest of the south hill. Neither can that fact be ascertained from any other evidence in the case because: (a) There is no evidence as to the rate of speed at which either car was traveling as it approached the point of collision [1]; hence the location or position of defendant's car when decedent's car was on the crest of the south hill, or their relative positions with respect to the crest of the hill on which the collision occurred, cannot be reckoned. (b) Neither is there any evidence whatever as to the distance between the two hills in question; hence, the distance that decedent's car traveled from the crest of the south hill to the crest of the north hill on which the collision occurred is not shown. (c) Neither is there any evidence of the distance from the crest of the south hill to the hollow, 40 to 60 feet from the crest of the north hill; hence, we cannot ascertain how far decedent's car had traveled from the crest of the south hill to the hollow, at which he changed the course of his car to the west side of the roadway.

So the question of why, when decedent was in the hollow 40 to 60 feet from the crest of the north hill (at which point certainly he could not have seen defendant's car approaching that crest from the north), decedent suddenly changed the course of his car and drove directly into the path of defendant's car remains imponderable. Many differing surmises could be advanced, but none upon a reasoned basis.

■ Plaintiff further says, however, that in view of the lack of any evidence as to why decedent's car took the course it did, we should assume he was in the exercise of due care, citing Lyon v. Southard, Mo., 323 S.W.2d 785. The facts in that case are not analogous to those here. That case states, loc. cit. 788, the general rule of law that "[w]here there is no direct evidence of conduct which would indicate negligence, a person in case of death is presumed to have exercised due care." In the instant case, the evidence adduced by plaintiff, standing alone and unexplained, convicts decedent of negligence as a matter of law. And, there being no evidence that the antecedent negligence of defendant had led or caused decedent to change the course of his car from the east to the west side of the roadway, it cannot be said that defendant's antecedent negligence was the sole proximate cause of the collision. There is, therefore, no escape from the conclusion that decedent's unexplained (and, therefore, insofar as the evidence shows, negligent) act in driving his car to the west side of the road in violation of the statute and the general rules of the road was a proximate cause of the collision. Consequently, plaintiff's case must fail. See Lewis v. Zagata, 350 Mo. 446, 166 S.W.2d 541; Borrini v. Pevely Dairy Co., Mo.App., 183 S.W.2d 839; Filkins v. Snavely, 359 Mo. 356, 221 S.W.2d 736.

The judgment is affirmed.

All concur.

1. A witness who lived one-eighth of a mile (660 feet) south of the "scene of the accident" testified that he saw decedent's car as it passed his home that morning immediately prior to the collision and estimated its speed at 70 miles per hour, more or less, but that evidence, being unfavorable to plaintiff, is disregarded in reviewing the problem here presented.