Mabel B. WILLIAMS, Respondent,

v.

Herbert H. CAVENDER and Emil G. Trott, Executors of the Estate of Thera P. Cavender, Decedent, Appellants.

No. 50066.

Supreme Court of Missouri,

Division No. 2.

April 13, 1964.

Opinion Modified on Court's Own Motion and Motion for Rehearing or to Transfer to Court En Banc Denied May 11, 1964.

Louis F. Cottey, Lancaster, for appellants.

Bruce Normile, Brown & Normile, Edina, for respondent.

EAGER, Judge.

Plaintiff, the widow of Minor E. Williams, sued defendant Executors for her husband's wrongful death in an automobile collision. Defendants' decedent died almost instantly in the same tragedy. Mr. Williams died six days later from the injuries he sustained. There were no witnesses and we are forced to decide the issues upon purely circumstantial evidence. Plaintiff recovered a verdict and judgment for $25,-000, and defendants' motions for judgment and for a new trial were overruled.

The collision occurred on U. S. Highway 63 between Kirksville and Macon, on October 14, 1960, at about 2:15 p. m. This particular stretch of road was of relatively new concrete paving, 24 feet wide; the shoulders were of dirt, 11 feet wide, but soft and muddy at the time. On account of the slope, the west shoulder was somewhat more muddy than the east one. The pavement was dry. Highway 63 runs generally north and south. The collision occurred just south of the approximate center of a gradual curve to the southwest; at that point the road was substantially level. The center line was painted black, with alternating white streaks.

The decedent, Thera P. Cavender, was driving a 1952 Plymouth north toward her home in Iowa; Williams was driving a 1959 Oldsmobile from Kirksville to Macon. The sole witness of any real consequence on the merits was Trooper Charles K. Carlson, one of the two investigating Highway Patrolmen, who was produced by the plaintiff. He arrived at the scene within approximately twenty minutes, and he made various measurements and notations; these were incorporated into a report which he used to refresh his memory. The following is the substance of his testimony, including his physical findings. The Plymouth was headed south, with both of its left wheels on the center line, and the major portion of the car in the west (southbound) lane; its driver appeared to be dead. The major force of the impact on that car was to the right front, but the whole front of the car was demolished; there was some damage to the right door and minor damage on the right rear near the taillight. (The photographs confirm this testimony, generally.) The Williams Oldsmobile was mainly on the west shoulder, headed southwest, and a little north of the Plymouth; its right front wheel was at the west edge of the shoulder, its right rear wheel just off the slab, and its left rear wheel on the west edge of the slab. The impact to the Oldsmobile covered the entire front end, but with marked damage to the left front door. The rear of the Plymouth was 15 feet south of the left rear corner of the Oldsmobile. The debris "started near the center line," the majority being in the west lane, but there was debris in both lanes. Mr. Williams was found sitting on the edge of the road, but he said, "I don't know what happened. Did I hit someone or did someone hit me?" He also stated that he was headed toward Macon, that he had his "buzzer" set and, in effect, that he was therefore not going "over 70."

This witness described three "skidmarks" which he had located and measured. One, which he designated as a *pressure* mark rather than a skidmark, began "back south of the point of impact," 4 feet from the east edge of the paving, and ran continuously, first to the north and then somewhat westerly in an "arcing" direction for a total of 44 feet; this mark ended at a

point 8 feet and 8 inches from the east edge of the paving and stopped at "approximately the point of the impact" (no objection was made to that statement on direct examination). By simple arithmetic the northerly end of this mark would have been 3 feet and 4 inches east of the center of the road. The witness testified that this mark was of a type "not normally made by applying the brakes," but was, in his opinion, one made by undue or unnatural force thrown on a car, as in a change of direction; also, that if one turns a car to the left, extra pressure is thrown on the right side. The distance from the end of this mark to the rear of the Plymouth was approximately 23 feet. The witness located and measured a 19 foot skidmark which arced from the left front wheel of the Plymouth, first to the east and then to the north; this was not more definitely described.

Trooper Carlson found further to the north, and measured, a skidmark 29½ feet long, starting on the center line of the road and running south and west continuously to and under the right rear tire of the Oldsmobile. This mark ran southerly for 18 feet in a gradual angle to the west, at which point it was 2 feet west of the center line; at that point it made an abrupt angle to the west and went 11½ feet farther to and under the right rear tire of the Oldsmobile. This mark thus extended into and across the west or southbound lane. The abrupt angle in this skidmark was approximately a car's length from the north end of the 44 foot pressure mark in the east lane, already described. The Oldsmobile was approximately 6 feet wide and 17 feet long; the Plymouth was approximately 5 feet wide. The Patrolman testified that, although other cars had parked and had pulled on and off the shoulders and some had left tracks, he walked up and down the highway for several hundred feet in each direction and found no other marks that in his opinion were related to the collision. This witness declined to identify as skidmarks any supposed marks shown in photographic exhibits aside from those which he had described orally, stating that he had listed those which he could trace directly to the accident, that he did not recall any others, and that he could not say that any of the things pointed out on the photographs were skidmarks. He did identify various photographs as accurate representations of the damaged cars and of the highway.

A Mr. Huston testified for plaintiff: that, as he drove by the scene going south, after the accident, there were vehicles parked along the sides of the road and on the highway; that he saw to the south of the (wrecked) cars "some tracks" that had gone off the east side of the road, back on the road, off the west side, back on again, and possibly off again on the east side. At one point he said: "I did not see the tracks, only where they had come back on the highway the second time," but he also stated that the tracks probably began 500–700 feet from (south of) the scene of the accident; whether this was the north end or the south end we do not know. He stated that he had no idea what car made the tracks, although the parked vehicles "wouldn't leave marks like that." Apparently the witness did not get out of his car. The Court sustained an objection (obviously intended as a striking) to this testimony as wholly immaterial to the issues and as not sufficiently connected up. Trooper Carlson had previously testified that he found no evidence on the highway to indicate that a car had been out of control in the vicinity and had run off and back on the road; he had also testified that he did not see any fresh tracks running off on one side, back, off on the other side and back on, in a continuous line.

There is no controversy over the fact that the injuries suffered in this collision caused the death of Mr. Williams. Much evidence was produced, and from many witnesses, concerning his earnings, his ability and his intelligence. Since there is no contention that the verdict is excessive, we do not notice this evidence further.

At the close of plaintiff's evidence defendants moved for a directed verdict on the specific grounds that plaintiff had failed to establish any negligence of defendants' decedent and that the evidence did establish contributory negligence on the part of Mr. Williams, as related in detail in .the motion. The motion being overruled, defendants offered no evidence, but after that election they re-offered their motion, which was again overruled. Plaintiff submitted her case to the jury on the sole theory that Miss Cavender negligently drove her car into the southbound lane and to the left of her own right half of the highway, while Williams was in his own proper lane, that she was thereby negligent, and that her negligence caused the collision. Plaintiff's instruction contained the usual "tail" excepting a finding of contributory negligence "as submitted in other instructions."

Appellants' first point is that the Court erred in not sustaining their after-trial motion for judgment in accordance with their motions for a directed verdict. Their other points concern plaintiff's main verdict-directing instruction and certain rulings in connection with the evidence. We proceed, first, to the vital question of the submissibility of plaintiff's case. It is always unfortunate when we are forced to determine the merits of a case upon such meager and strictly circumstantial evidence as we have here.

We mention, first, the evidence of Mr. Huston, namely, that he saw muddy tracks south of the scene, which first went off the road on one side, back, off on the other side, back, and apparently off again. The testimony was vague and in certain respects apparently conflicting in itself. The trial court sustained an objection to this testimony as immaterial because not in any way connected up with the cars involved. Respondent insists that this ruling was erroneous and that we should consider the evidence here in connection with the sufficiency of plaintiff's case. While this is somewhat unusual in a jury tried case, we shall do so; one very good practical reason for doing so is that if this evidence should make any material difference, and if the ruling excluding it were wrong, we would feel impelled to remand the case for another trial, even if we held the admitted evidence to be insufficient for a submission.

Unfortunately, there is no diagram or plat in evidence which is of any material assistance. The photographs are helpful as to the location of the cars and the damage to the cars. We are urged by plaintiff to consider certain supposed marks, streaks, etc., in some of the photographs; the Highway Patrolman declined to identify these as skidmarks and confined his testimony to those marks which he had located on the ground and made notes of. We shall do likewise; anything else would be indulging in sheer speculation.

 On direct examination of Trooper Carlson by plaintiff's counsel he was allowed to state, without objection or motion to strike, that the forty-four foot pressure mark (made by the Plymouth) stopped at "approximately the point of the impact"; he further said that the end of the mark was 8 feet and 8 inches from the east edge of the highway. When the witness made essentially the same answer on cross-examination plaintiff's counsel objected and moved to strike the reference to the "approximate center of the impact" as a conclusion; this was overruled. Substantially the same thing occurred again. Plaintiff insists here that all consideration of the Trooper's testimony concerning the point of impact must be disregarded, citing Duncan v. Pinkston, Mo., 340 S.W.2d 753, and Hamre v. Conger, 357 Mo. 497, 209 S.W.2d 242. Without any impairment of the views we have expressed in those cases, we may say that they are not controlling here. Plaintiff's own counsel introduced the first such reference to the point of impact. That particular reference constituted, in substance, all that the witness said on the subject. The evidence was in the case, conclusion or otherwise, for whatever it was worth. The subsequent statements were no more

than cumulative, at most. Conclusions, and even hearsay, may be considered for whatever they are worth, if not objected to. The matter was not exaggerated here by the use of any diagram pinpointing to the jury the precise point of impact, if that be material, and the testimony dealt with more or less obvious generalities.

The negligence of a party may be established by circumstantial evidence, but the circumstances so established must give rise to an inference of negligence which reasonably follows, without guesswork or speculation. Thompson v. Jenkins, Mo., 330 S.W.2d 802, 804; Schoen v. Plaza Express Co., Mo., 206 S.W.2d 536, 538; Bowers v. Columbia Terminals Co., Mo.App., 213 S.W.2d 663, 670. As said in Bowers, supra, at loc. cit. 670: "For the inference to be legitimate, the circumstances must of course point to the desired conclusion with reasonable certainty; and it is not enough that they may be merely consistent with such a conclusion, or that they may give equal support to inconsistent and contradictory conclusions." It has frequently been held, and we now reaffirm the doctrine, that if the circumstances support inconsistent conclusions of equal probability, one in favor of plaintiff and one against, the plaintiff has failed in that event to establish her case, or to remove it from the realm of speculation. Bowers, Thompson, Schoen, supra. In Lappin v. Prebe, 345 Mo. 68, 131 S.W.2d 511, the Court said, at loc. cit. 513: "In cases where the evidence tends to support equally either of several inconsistent factual inferences, some of which result in a failure of proof of defendant's actionable negligence, the factual issue or issues essential to plaintiff's case may not be said to be established by legitimate proof." (Citing cases.)

Thus, we are relegated to the evidence for the application of those rules. The most salient evidentiary facts are: the forty-four foot pressure mark made by the Plymouth, leading up to the place of collision; the gently angling and then sharply veering 29½ foot skidmark made by the Oldsmo-

bile; the positions of the cars; the damage to the cars; the location of the point of impact, as best it can be determined, and the location of the debris as bearing upon that; and, perhaps, the arcing skidmark of 19 feet leading north and east from the left front wheel of the Plymouth. Though we are prohibited from sitting as a jury to weigh the evidence, we must evaluate these circumstances in order to see whether an inference of negligence on the part of Miss Cavender *reasonably follows* therefrom (Thompson v. Jenkins, supra), and likewise an inference of negligence (contributory) on the part of Mr. Williams.

Defendants persistently argue that plaintiff, having adduced the evidence of Trooper Carlson as the only testimony on the merits, is bound thereby. Generally, that principle is recognized. Burr v. Singh, 362 Mo. 692, 243 S.W.2d 295, 299; Krause v. Laverne Park Ass'n, Mo.App., 240 S.W.2d 724, 727. But the question here, actually, is not whether plaintiff is bound by that testimony, but what inference or inferences reasonably and logically follow from it. It is obvious that the Plymouth made the forty-four foot pressure mark with a right wheel, while turning to the left (west); if it had been made by a left wheel the right wheels would have been off in the mud to the east. Defendants say that this mark was made by the front wheel, plaintiff says by the rear. More of that later. This mark was wholly in the east lane and ended 3 feet and 8 inches east of the center of the highway. It is also obvious that the 29½ foot skidmark farther to the north was made by the right rear wheel of the Oldsmobile, for the only testimony on the subject shows that it led directly *to and under* that wheel. This mark, in itself, places the Oldsmobile almost entirely in its wrong (northbound) lane immediately prior to the collision; starting on the center line the mark first angled very gradually back into its own lane for 18 feet, then suddenly made an "abrupt angle" to the west; it ended on the west shoulder 11½ feet from the "abrupt angle." It is most reasonable to infer that

this abrupt change in direction was caused by the collision. At the point of the angle in this skidmark it was 2 feet west of the center line. A car ordinarily does not shift direction in an *angle* without some outside force. When we further consider that this change in direction of the Oldsmobile was appoximately *a car's length* from the end of the Plymouth's forty-four foot pressure mark, the only reasonable inference is that the right rear wheel of the Oldsmobile was at the *angle* when the collision occurred, headed almost south. The Plymouth was obviously headed more or less northwest at the time of the impact, or at least somewhat west of north. It is more reasonable to assume that a pressure mark made in turning should be made by a front wheel than by a rear wheel; this for the reason that the forward motion combined with the turn would put more force on the turning wheel. It also seems that if the right rear wheel of the Plymouth had made the pressure mark, it would have been virtually impossible for the Oldsmobile to have traveled in the course it did, for the impact would have occurred approximately a car's length farther north or northwest. We conclude that this forty-four foot mark was made by the right front wheel of the Plymouth. Thus, at the time of impact, much of the Oldsmobile was still on the east side of the road, and probably the left front corner of the Plymouth extended into the west lane. With these landmarks, the conclusion of the witness Carlson as to the location of point of impact becomes more or less immaterial, but he placed it at approximately the point just determined, although it was never marked by him. The actual impact thus occurred at or near the very center of the road. The more severe impact on the right side of the Plymouth would seem to have occurred because it was headed somewhat west of north. We further note that the impact turned the Plymouth completely around, just how we need not say, nor can we explain the nineteen-foot arcing skid from that car's left front wheel. We do not feel that the movement of that car

after the actual impact is of any great importance, for it could have little relation to the car's movements prior to impact. In any event, the Plymouth was knocked back southward about 23 feet by the force of the impact with the larger car.

The parties have cited several cases, pro and con, decided on circumstantial evidence. Under these circumstances no other case or cases can be a very reliable guide, for each one must depend upon its own individual facts. Other cases may be of some help with regard to the emphasis placed upon certain features of the evidence. We have thus examined the following cases cited by the parties, as well as others: Borrini v. Pevely Dairy Co., Mo.App., 183 S.W.2d 839; Thompson v. Jenkins, Mo., 330 S.W.2d 802; Schoen v. Plaza Express Co., Mo., 206 S.W.2d 536; Hamre v. Conger, 357 Mo. 497, 209 S.W.2d 242; Bowers v. Columbia Terminals Co., Mo. App., 213 S.W.2d 663; Lappin v. Prebe, 345 Mo. 68, 131 S.W.2d 511; Helton v. Huckeba, 365 Mo. 93, 276 S.W.2d 78; Filkins v. Snavely, 359 Mo. 356, 221 S.W.2d 736; and Justice v. Malin, Mo., 336 S.W.2d 77. We discuss briefly the cases particularly relied on by the plaintiff. Essentially, what was decided in Helton was that there was enough evidence to give rise to a reasonable inference that the collision occurred on the side of the road occupied by plaintiff's decedent. This was held to be sufficiently indicated by a gouge mark on that side of the road, the location of the cars, and certain oral testimony of survivors. The evidence was thus held to justify a submission of the issue of defendant's negligence in driving on the wrong side of the road. In Filkins, supra, the Court similarly held that there was a reasonable inference that the place of collision was on plaintiff's decedent's (east) side of the road; both that car and the defendant's tractor trailer were off the road on the east side, and there was a gouge mark in the pavement on that side with scratches leading from it to the front of plaintiff's decedent's car; nothing was found on the west half of the pavement,

and the debris was all on the east half. From this the Court found that there arose a reasonable inference that defendant's tractor trailer was operated to the left (east) of the center of the road and that the issue of defendant's negligence was submissible. The Court also held, however, that the defendant was entitled to an "emergency" instruction based upon its driver's testimony that he was suddenly confronted by plaintiff's decedent's car in his own lane. In Justice, supra, it was held that one who drives on the wrong side of the road, without suitable explanation, is negligent; also, that there is no presumption of due care in favor of a decedent who has done so. In Thompson, the appeal arose from a judgment directed for the defendant on plaintiff's opening statement. The Court held on appeal that from the stated evidence there arose a reasonable inference that defendant had driven his car into the wrong lane where it crushed the car of plaintiff's decedent. The physical facts were that defendant's car was found headed directly *"into"* the other car, and that it extended partially over into the wrong (east) lane; that plaintiff's decedent's Dodge was in its own lane except where a buckling from the impact on its side had apparently caused its left rear "to extend a short distance" over the center, and that the crushing damage to the Dodge was all on its left side. There was also some indication that defendant's car had just previously traveled at least partially on the west shoulder and had come back on the road at an angle. In so far as we are concerned here, those cases hold on their particular and respective facts that substantial evidence of the occurrence of a collision on one's "wrong" side of the road, without explanation, makes a submissible case of negligence against that party. In those cases, the Court was not confronted with evidence which raised two equally probable but inconsistent inferences. We do not quarrel with those rulings. In some of those cases there were more specific physical facts than we have, such as gouges in the pavement, the fact that one car was headed directly into the other, and in at least one, oral testimony.

■ We hold that here the more probable inferences are: that the forty-four foot pressure mark was made by the right front wheel of the Plymouth; that the impact occurred when the Plymouth was at the north end of that mark, headed somewhat west of north; that the southbound Oldsmobile was almost entirely in the wrong (east) lane when it began the 29½ foot skidmark made by its right rear wheel, and that the collision occurred when its right rear wheel was at the point of the abrupt angle in that skidmark, with the car headed very slightly west of south; that at the time of impact, giving to plaintiff the benefit of a favorable inference, the left front corner of the Plymouth extended past (west of) the center line; that at the time of impact a very substantial portion of the Oldsmobile (two-thirds of the rear and a gradually decreasing width toward the front) was on its wrong (east) side of the road; that each car was partially on its wrong side of the road; that the impact with the heavier Oldsmobile completely turned the Plymouth around and knocked it southward to its final position. There can be no question of the credibility of the evidence from which we draw these inferences for it all came from plaintiff's own witness. The location of the debris is not in itself conclusive. Schoen v. Plaza Express Co., Mo., 206 S.W.2d 536, 539; Hamre v. Conger, 357 Mo. 497, 209 S.W.2d 242, 248.

■ From these inferences it might be argued that both parties were negligent, in the light of the foregoing cases. But there is more to be inferred from this set of facts. The Oldsmobile had been wholly in the east (wrong) lane as clearly shown by its skidmark and was attempting belatedly to get back. The Plymouth was swerving sharply to the left and was just beginning to get into the west (wrong) lane. These inferences, which we hold to be reasonable and probable, furnish a reasonable explanation of Miss Cavender's ac-

544

tions; she could see without obstruction, for the curve was not sharp; the further reasonable inference is that she saw the Oldsmobile on her side of the road and chose the hazardous course of swerving to her left instead of taking to the muddy shoulder. We cannot say that such action, probably taken in a fraction of a second and under those circumstances, would constitute negligence. In Borrini v. Pevely Dairy Co., Mo.App., 183 S.W.2d 839, at loc. cit. 844, 845, the Court said: "In construing this statute, it has been held that one traveling on the highway is not necessarily guilty of negligence when turning to the left, because one turns to the left in an attempt to avoid another vehicle approaching from the opposite direction; but, that the question as to whether such negligence exists depends upon the facts and circumstances of the particular case. Under appropriate circumstances, a motorist meeting another automobile may turn to the left. * * * The suddenness of the turn indicates that there was some compelling force for his conduct, and that apparently he was confronted with a sudden emergency; but, we cannot presume that the turn was made in utter disregard of the safety of others, for negligence is never presumed." See also: Lewis v. Zagata, 350 Mo. 446, 166 S.W.2d 541, 545–546; Filkins v. Snavely, supra; Wines v. Goodyear Tire & Rubber Co., Mo.App., 246 S.W.2d 525, 528. These cases deal with similar emergencies. In this latter view we find no substantial evidence of negligence on Miss Cavender's part. We do not rely upon any presumption of non-negligence, but upon the inferences which reasonably follow from the evidence. And if the evidence should be held to justify two equally established but inconsistent inferences, plaintiff has not established a submissible case. See cases already cited.

If it be said that such an inference of an emergency here borders on the speculative, and that there has been no sufficient explanation for Miss Cavender's swerving (which we do not hold), we still arrive at the same result. The positive evidence of the skidmark of the Oldsmobile convicts plaintiff's decedent of negligence directly causing or contributing to the collision, as a matter of law. Reasonable minds could hardly differ in considering that driver as negligent when his car was almost wholly in the wrong lane at a point approximately 18 feet from the point of impact, and where *at* the impact, it was still largely in that lane (its right rear wheel being 2 feet west of the center line). There can be no presumption of non-negligence on Williams' part in the light of this evidence. As we view the case, in no event was plaintiff entitled to recover on this evidence.

We have considered, but have attached no significance to the testimony of Mr. Huston about muddy tracks. As the trial court obviously concluded, these were in no possible way connected up with Miss Cavender's car or with the collision; to have taken this testimony as any indication of a loss of control by Miss Cavender would have been pure speculation.

In this view, none of appellants' other points need be considered. The judgment is reversed.

All of the Judges concur.